Matter of Fox (2021 NY Slip Op 04104)





Matter of Fox


2021 NY Slip Op 04104


Decided on June 29, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 29, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.,
Barbara R. Kapnick
Anil C. Singh
Lizbeth González
Tanya R. Kennedy, JJ.


Motion No. 2021-00778 Case No. 2021-00782 

[*1]In the Matter of Stephen L. Fox, (Admitted as Stephen Lawrence Fox) an attorney and counselor-at law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Stephen L. Fox, (OCA Atty. Reg. No. 2310274) Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 5, 1990.




Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Vitaly Lipkansky, of counsel), for petitioner.
Respondent, pro se.



Per Curiam 


Respondent Stephen L. Fox was admitted to the practice of law in the State of
New York by the First Judicial Department on February 5, 1990, under the name
Stephen Lawrence Fox. At all times relevant to this proceeding, he maintained an office in Connecticut. This Court maintains jurisdiction based upon his admission for the practice of law within the First Judicial Department (22 NYCRR 1240.7[a][2]).
The Attorney Grievance Committee (the Committee) seeks an order pursuant to Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9 (a) (3) immediately suspending respondent from the practice of law until further order of the Court, based upon respondent's failure to comply with the Committee's lawful demands for bookkeeping records and other documents pursuant to an investigation or proceeding.
In March 2019, the Committee commenced an investigation after the Lawyers' Fund for Client Protection advised that, in September 2018, three checks totaling $16,458 issued from respondent's IOLA account were dishonored due to insufficient funds. The Committee asked respondent to submit a written explanation as to why the checks at issue were dishonored and for him to produce specified bookkeeping records that he is obligated to maintain under New York Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15(d)(1).
On November 1, 2019, respondent emailed an answer asserting that his bank erroneously reported to the Lawyers' Fund that the IOLA checks at issue had been dishonored. Specifically, he claimed that his client, J.P., was to have received $16,458 in repayment of funds he loaned to a third party as an investment; however, he was purportedly concerned that as the memo on one of the three escrow checks at issue used the word "loan" but did not specify "investment return," he would encounter tax issues. Therefore, in accordance with his client's purported wishes, respondent claimed to have "canceled" the escrow checks and remitted $17,000 to J.P. via two bank cashier's checks for $7,500 and $4,030, respectively, and the balance in cash.
Respondent's answer included a photograph showing the fronts of two cashier
checks made payable to J.P. and a bank envelope. In addition, respondent
claimed that he canceled the checks at issue through a bank teller before they went
through. As purported evidence of such, he included his September 2018 bank
statement which showed no activity on his account for the month prior to September 21
and did not show the dishonored checks but which his bank nevertheless reported as having been presented on September 13 and returned because the account balance was "insufficient for payment." Respondent's answer did not include the complete bookkeeping records requested by the Committee.
On January 31, 2020, pursuant to a judicial subpoena, respondent, pro se,
appeared before the Committee for a deposition at [*2]which he produced some of the previously requested bookkeeping records except for his ledger and retainer agreements. He testified that: his client J.P. had made an investment loan of $11,000 to a third party; the borrower intended to use the funds to finance a start-up
telecommunications venture for which J.P. would receive a return of $16,548, which was
to be paid through respondent; J.P. had tax related concerns in that he did not want it to
appear that the return on his investment was repayment of a usurious loan; the
borrower defaulted; and out of a sense of personal responsibility respondent repaid J.P.
$17,000 out of his own personal funds of which his client was fully aware.
Respondent further testified that: he repaid J.P. out of a $35,000 legal fee earned
in another matter which he maintained in his IOLA account and withdrew in
increments, which included the transfer of $17,000 thereof to his operating account
from which he repaid J.P. via the aforementioned cashier's checks with the remainder in cash (as this was the manner in which J.P. purportedly wanted the funds remitted to him); respondent kept the $35,000 earned legal fee in his IOLA account because he had previously been victimized by two alleged financial fraudsters; he paid personal expenses out of his escrow account "only for a couple of months" but ceased doing so in or about 2018 after his fears of further victimization were allayed; and he denied there were any liens or judgments against him at the time personal funds were on deposit in his escrow account.
Respondent also testified that: he admittedly issued the three dishonored checks
at issue when his escrow account had a zero balance because he had been led to believe
that the monies owed to J.P. were on the way; J.P. deposited the escrow checks in
contravention of respondent's instruction not to do so until he received confirmation of
repayment; respondent purportedly then went to his bank and instructed a
teller to cancel the three checks which were ultimately returned; and respondent (to
whom J.P. assigned his collection rights) has not received payment from, nor pursued
collection against, the defaulting party because the debtor was "going through some
tough circumstances." Respondent's initial response to the Committee made no mention of the fact that he paid J.P. out of his personal funds; his claimed reason being
that he did not want to implicate or harm the debtor.
During the deposition, the Committee requested respondent produce additional
documents, namely his bookkeeping records, including his ledger, for his
IOLA account from October 2018 through February 2019; the September and October
2018 bank statements for his operating account; an affidavit from J.P. regarding the
investment transaction at issue and evidencing that he was aware that the borrower
defaulted and that he was repaid from respondent's personal funds; emails from the
alleged defaulting party memorializing that respondent [*3]was trying to obtain funds from
him; an affidavit from the bank teller who respondent purportedly instructed to cancel the three dishonored escrow checks; and evidence supporting his claim that he was a victim of financial fraud. Respondent agreed to submit the material by March 2, 2020.
By February 4, 2020 letter, sent by priority mail to respondent's registered
address in Connecticut (a P.O. Box) and a Manhattan address which he used as a rented office, the Committee reminded him of the upcoming deadline. Also, by March 6, 2020 letter, sent by priority mail to respondent's Connecticut address, the Committee provided the transcript of respondent's deposition which recited the documents requested and the deadline for submission thereof. None of the letters were returned. Respondent ignored the Committee's request.
On May 27, 2020, the Committee emailed respondent a letter informing him that the requested documents were to be submitted within two weeks and advised that his
failure to cooperate with its investigation could result in his interim suspension. By June 15, 2020 email, respondent stated that he intended to comply with the Committee's requests "within the next few weeks" and explained that he had been prevented from doing so earlier because of the mandatory lockdowns caused by COVID and medical issues. Again, notwithstanding his promised cooperation, respondent did not submit any of the requested material to the Committee.
On July 17, 2020, the Committee emailed a letter requesting respondent submit the outstanding items within 10 days and again warned him that his failure to do so could result in his interim suspension. On July 24, 2020, the Committee emailed respondent another letter which, among other things, directed him to complete an Excel spreadsheet prepared by its investigative accountant (based on records obtained directly from respondent's bank) by identifying the client or personal matter pertaining to each escrow account transaction during the period at issue. He was directed to submit his response within 10 days and once more advised him that his failure to cooperate could result in his interim suspension.
By August 10, 2020 email, respondent apologized for not yet responding to the
Committee but asserted that he had been preoccupied with a death in the family and that he would provide a response no later than August 19. Again, respondent ignored the Committee's request.
Finally, from October 8, 2020 to December 23, 2020, the Committee sent respondent several certified letters and emails requesting that respondent submit the aforementioned material and advising him that failure to do so could result in his interim suspension. Respondent answered some of the emails apologizing for the delay. Ultimately, respondent never submitted the requested material.
Under 22 NYCRR 1240.9 (a), an attorney who is the subject of a Committee investigation may be suspended from the practice of law on an interim basis upon [*4]a finding that the attorney has engaged in conduct immediately threatening the public interest. A basis for such a finding includes an attorney's failure to "comply with a lawful demand of the Court or a Committee in an investigation or proceeding" (22 NYCRR 1240.9 [a] [3]).
The Committee argues that respondent has repeatedly failed to comply with its lawful investigative demands made at his deposition, via letters and emails, and as directed by judicial subpoena (which directed him to produce his bookkeeping records for the six-month period preceding the dishonored escrow checks but, as noted, the Committee later requested additional records and documents), therefore, his interim suspension under 22 NYCRR 1240.9(a)(3) is warranted.
Respondent was personally served with this motion, and the return date was
twice adjourned at his request, but he has not submitted a response.
The Committee has met its burden and respondent should be immediately suspended until further order of this Court. While respondent partially cooperated by producing some of his bookkeeping records and appearing for a deposition, he has not produced the bulk of the records, including his ledger, and other documents as directed by judicial subpoena and repeatedly requested by the Committee since 2019 (Matter of Miller, 170 AD3d 1 [1st Dept 2019]; Matter of Moreno, 149 AD3d 65 [1st Dept 2017]; Matter of Evans, 142 AD3d 122 [1st Dept 2016]; Matter of Reid, 137 AD3d 25 [1st Dept 2016]).
Accordingly, the Committee's motion should be granted and respondent is suspended from the practice of law effective immediately, and until further order of this Court.
All concur.
It is Ordered that the motion is granted and respondent Stephen L. Fox (admitted as Stephen Lawrence Fox) is suspended from the practice of law in the State of New York pursuant to 22 NYCRR 1240.9 (a) (3), effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court, and
It is further ordered that respondent Stephen L. Fox (admitted as Stephen Lawrence Fox) is commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another; that respondent is forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board or commission or other public authority; that respondent is forbidden to give another an opinion as to the law or its application or advice in relation thereto, all effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court. Respondent is directed to fully comply with the provisions of the Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made a part hereof, and
It is further ordered that, within 20 days of the date of service of this decision, respondent Stephen L. Fox (admitted [*5]as Stephen Lawrence Fox) may submit a request, in writing, to this Court for a post suspension hearing (see 22 NYCRR 1240.9 [c]).
Entered. June 29, 2021